IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TEXARKANA DIVISION

| | |
|---|---|
| JUAN R. CASTRO, SR.<br>*Plaintiff,*<br><br>v.<br><br>TEXAS A&M UNIVERSITY AT TEXARKANA<br>*Defendant.* | Civil Action No. 5:25-cv-66 |

## PLAINTIFF'S ORIGINAL COMPLAINT

**TO THE HONORABLE COURT:**

Plaintiff Juan R. Castro, Sr., by and through his undersigned counsel, hereby completes this Complaint against Defendant Texas A&M University at Texarkana and alleges as follows:

### I. PARTIES

1. Plaintiff Juan R. Castro, Sr. ("Dr. Castro" or "Plaintiff") is an individual residing in Longview, Texas. At all relevant times, Plaintiff was a qualified individual with a disability within the meaning of the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq. ("ADA").

2. Defendant Texas A&M University at Texarkana ("TAMUT") is a public institution of higher education and component of The Texas A&M University System, located in Texarkana, Texas. TAMUT employs more than 15 employees and is an "employer" within the meaning of 42 U.S.C. § 12111(5).

### II. JURISDICTION AND VENUE

3. This court has jurisdiction pursuant to federal question jurisdiction.

4. Specifically, this Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343, and 42 U.S.C. § 12117(a), as this action arises under federal law, specifically the Americans with Disabilities Act, as Amended in 2008.

5. This Court has supplemental jurisdiction over state law claims pursuant to 28 U.S.C. § 1367.

6. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) because the events, acts, and omissions, giving rise to this lawsuit occurred in this judicial district.

### III. FACTUAL ALLEGATIONS

7. Dr. Juan R. Castro, Sr., is qualified for the job with Defendant.

8. Plaintiff is a highly qualified academic professional with a Ph.D. in Financial Economics from the University of New Orleans.

9. Plaintiff has over 26 years of experience teaching finance and economics, and extensive experience in higher education administration, including serving as Dean of the Fred Hale School of Business at East Texas Baptist University.

10. Plaintiff is a Fulbright Scholar, published author, and recognized expert in his field with an exemplary employment record spanning multiple universities.

11. In April 2022, Defendant TAMUT, through its Dean Divya Choudhary, offered Plaintiff the position of Executive Director of the Center of Financial Literacy and Investment at an annual salary of $132,000.

12. Plaintiff was hired on June 1, 2022, to develop and establish the Center, which had received a $2.5 million grant from the Texas state legislature.

13. Plaintiff's job duties primarily involved: (a) developing strategic plans for the Center; (b) designing financial literacy curriculum; (c) planning Center operations; and (d) preparing for conferences and presentations.

14. Plaintiff's work was primarily intellectual and could be performed remotely.

15. In early September 2022, Plaintiff began experiencing severe and chronic back pain that substantially limited his major life activities, including walking, standing, sitting for extended periods, and performing manual tasks.

16. Plaintiff's condition constituted a "disability" within the meaning of 42 U.S.C. § 12102(1)(A) as it substantially limited one or more major life activities.

17. Plaintiff sought medical attention and was treated at an emergency facility, where he was prescribed treatment for severe pain management.

18. Medical examination by specialists, including MRI imaging, revealed that Dr. Castro had damage to vertebrae and spinal stenosis requiring ongoing treatment.

19. Plaintiff's treating physicians prescribed a comprehensive treatment plan including physical therapy in Longview, Texas where Plaintiff resided, periods of rest and/or limited mobility, and pain management.

20. Dr. Castro was informed by his doctors that he could gradually return to full activity over several months.

21. Beginning in September 2022, Plaintiff requested reasonable accommodations from Defendant to enable him to perform his job duties while receiving necessary medical treatment.

22. Specifically, Plaintiff requested permission to work remotely two days per week to attend physical therapy in Longview and flexible scheduling to accommodate medical appointments in advance.

23. At the time, other TAMUT employees were working remotely due to COVID-19 without issue that did not have disabilities.

24. Additionally, the Center was still in development phase with no daily operational requirements requiring physical presence.

25. No face-to-face interaction was required for most of Dr. Castro's job functions.

26. The accommodations would not impose undue hardship on Defendant, and Plaintiff could perform all essential functions of his position with these accommodations.

27. At the time Plaintiff was commuting to Texarkana from Longview or staying in hotels in Texarkana for work.

28. Dean Choudhary, acting as Defendant's agent, immediately refused the accommodation request, stating Plaintiff should "use sick days instead."

29. When Plaintiff's limited sick leave was quickly exhausted due to his need for medical treatment, he formally submitted accommodation requests through TAMUT's Human Resources department with complete medical documentation from his treating physicians.

30. The medical documentation clearly established Plaintiff's disability and need for ongoing treatment, the specific accommodations required, the medical necessity of the requested accommodations, and Plaintiff's ability to perform essential job functions with reasonable accommodation

31. Despite clear medical evidence and the reasonable nature of the requests, Defendant, through Dean Choudhary and Provost Melinda Arnold, denied all accommodation requests without explanation, consideration of alternatives, or any attempt to engage in the interactive process.

32. Without proper treatment and accommodation, Plaintiff's condition progressively deteriorated, eventually requiring him to use a cane for mobility and stronger pain medication.

33. Defendant completely failed to engage in the interactive process as they refused to discuss any alternative and/or potential accommodation or modification, made no attempt to offer a

solution, rejected his requests with reasonable consideration or analysis, and refused to meet with Plaintiff to discuss accommodation options.

34. Defendant further failed to analyze Plaintiff's essential functions of the position.

35. After Plaintiff's accommodation requests, Defendant's treatment of Plaintiff became increasingly discriminatory and hostile.

36. Once Dr. Castro requested to work remotely on Mondays and Fridays, he was required to be physically present, even during doctors' appointments, and despite other employees outside of his protected class not being required to be on campus.

37. In February 2023, during a severe storm causing flooding in Texarkana, TAMUT's President advised all employees to avoid traveling to campus for safety reasons, especially those who live outside the area. Despite this campus-wide safety directive, Dean Choudhary, acting on behalf of Defendant, specifically ordered Plaintiff to report to the office in person from Longview to Texarkana.

38. Dean Choudhary then mandated that Plaintiff be present from 8:00 AM to 5:00 PM every day—a requirement not imposed on other employees and specifically designed to prevent Plaintiff from receiving necessary medical treatment during business hours.

39. Defendant's actions forced Plaintiff to choose between keeping his job and receiving necessary medical care, ultimately forcing him to discontinue physical therapy in December 2022, which caused his condition to worsen significantly.

40. Plaintiff hoped that if he quit doing his physical therapy he could keep his job and that the discrimination would stop.

41. Frustrated by the continued treatment, Dr. Castro communicated his concerns to Dean Choudhary and Provost Arnold in an email, explaining that he was spending more time than required on his tasks than if he were to be accommodated.

42. Dr. Castro described how more could be done and completed if the accommodation was in fact provided.

43. In response to his email the Provost Arnold sent us an email and arranged a Zoom meeting the following week. In this meeting, Dr. Castro expressed to Provost and Dean Choudhary that he felt he was mistreated because of his disability and request for accommodation, and that it had caused me to consider leaving TAMUT if the mistreatment continued, but offered to stay on if the treatment would stop, or for at least two months to complete any pending tasks related to student presentations and a Center website design, culminating in a conference with the Federal Reserve of Dallas if the treatment continued.

44. Instead of addressing Dr. Castro's concerns, the Provost Arnold immediately agreed to that Castro should depart within two months.

45. The Dean Choudhary emailed Castro later saying Castro needed to leave in five days.

46. Castro offered to stay on, but the Dean Choudhary said she would handle everything herself.

47. Dr. Castro called Provost Arnold several times, but never was called back.

48. Defendant refused to return Plaintiff's calls.

49. Subsequently, Dr. Castro was discharged February 12, 2023.

50. In the following weeks, Castro received a call from a faculty member who expressed frustration and anger over handling the Federal Reserve of Dallas conference, as he was embarrassed by the poorly prepared program and was upset with Dean for forcing Castro to leave.

51. Plaintiff engaged in protected activity by requesting reasonable accommodations for his disability, complaining about discriminatory treatment to supervisors, opposing practices he reasonably believed violated the ADA, and further communicating his concerns to Human Resources.

52. Defendant retaliated against Plaintiff for this protected activity by deciding that, to an inquiry about whether or not conditions could get better at work or if he could be accommodated, or else would need to leave, to decide to tell Dr. Castro his job was ending and he had five days to leave.

53. Plaintiff timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on December 1, 2023, alleging disability discrimination, failure to accommodate, and retaliation.

54. The EEOC conducted an investigation and issued Plaintiff a Notice of Right to Sue.

55. This lawsuit is filed within ninety (90) days of Plaintiff's receipt of the Notice of Right to Sue.

### IV. CAUSES OF ACTION – DISABILITY DISCRIMINATION, FAILURE TO ENGAGE IN THE INTERACTIVE PROCESS, FAILURE TO ACCOMMODATE, and RETALIATION IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT AND CHAPTER 21 OF THE TEXAS LABOR CODE

**DISABILITY DISCRIMINATION IN VIOLATION OF THE ADA and CHAPTER 21 OF THE TEXAS LABOR CODE**

56. Plaintiff incorporates by reference all preceding allegations as if fully set forth herein.

57. At all relevant times, Defendant was an "employer" within the meaning of 42 U.S.C. § 12111(5)(A), employing more than 15 employees and engaged in industries affecting commerce.

58. Section 12112(a) of the ADA provides that no covered employer shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, hiring,

7

advancement, discharge, compensation, training, or other terms, conditions, and privileges of employment.

59. Defendant violated 42 U.S.C. § 12112(a) by discriminating against Plaintiff "because of" his disability in the terms, conditions, and privileges of employment.

60. The Americans with Disabilities Act, as Amended in 2008 ("ADA") and Chapter 21 of the Texas Labor Code apply to all employees who are qualified individuals with a disability, have a history or record of a disability, and/or are "regarded as" disabled.

61. Plaintiff was a "qualified individual with a disability" within the meaning of 42 U.S.C. § 12111(8), able to perform the essential functions of his position with or without reasonable accommodation.

62. Under the ADA, a disability means, with respect to an individual:

(A) a physical or mental impairment that substantially limits one or more major life activities of such individual;

(B) a record of such an impairment; or

(C) being regarded as having such an impairment. 42 U.S.C.S. § 12102(1).

63. A major life activity is defined to include, but is not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working. 42 U.S.C.S. § 12102(2).

64. A major life activity also includes the operation of a major bodily function, including but not limited to, functions of the immune system, normal cell growth, digestive, bowel, bladder,

neurological, brain, respiratory, circulatory, endocrine, and reproductive functions. 42 U.S.C.S. § 12102(1).

65. The definition of disability in this Act shall be construed in favor of broad coverage of individuals under this Act, to the maximum extent permitted by the terms of this Act. 42 U.S.C.S. § 12102(4)(A).

66. An impairment that substantially limits one major life activity need not limit other major life activities in order to be considered a disability. U.S.C.S. § 12102(4)(C).

67. An impairment that is episodic or in remission is a disability if it would substantially limit a major life activity when active. U.S.C.S. § 12102(4)(D).

68. The determination of whether an impairment substantially limits a major life activity shall be made without regard to the ameliorative effects of mitigating measures such as—

(I) medication, medical supplies, equipment, or appliances, low-vision devices (which do not include ordinary eyeglasses or contact lenses), prosthetics including limbs and devices, hearing aids and cochlear implants or other implantable hearing devices, mobility devices, or oxygen therapy equipment and supplies;

(II) use of assistive technology;

(III) reasonable accommodations or auxiliary aids or services; or

(IV) learned behavioral or adaptive neurological modifications. U.S.C.S. § 12102(4)(E).

69. The Texas Commission on Human Rights Act (TCHRA) prohibits employers from discriminating against qualified individuals because of their disability. Tex. Lab. Code § 21.051, Tex. Lab. Code § 21.105.

70. Because the TCHRA parallels the language of the Americans with Disabilities Act, Texas courts follow ADA law in evaluating TCHRA discrimination claims. *Diaz v. Maximus Servs., L.L.C.*, No. 23-50914, 2025 U.S. App. LEXIS 4364, *1 (5th Cir. Feb. 25, 2025).

71. The TCHRA defines "disability" as "a mental or physical impairment that substantially limits at least one major life activity." Tex. Lab. Code § 21.002(6); § 21.002(11-a).

72. Dr. Castro is disabled under this criteria.

73. Dr. Castro had a back problem requiring therapy and pain management including spinal stenosis and damage to his vertebrae that substantially limits one or more major life activity, includes walking, sitting, and sleeping.

74. Dr. Castro's disability is neither minor nor transitory.

75. Dr. Castro is a qualified individual with a disability related to his spine and vertebrae.

76. Dr. Castro was able to perform the essential job functions of his job with or without a reasonable accommodation.

77. Dr. Castro is qualified for his job. He satisfies the prerequisites for his job, to include possessing skill, experience, educational background, licenses and ability, as is demonstrated by his performance.

78. A causal connection exists between his protected class status and the adverse employment actions he suffered in addition to the impact of the terms, privileges, and conditions of his employment.

79. Similarly situated employees outside of his protected class were treated more favorably than Plaintiff.

80. Additionally, as a result of his disability, Dr. Castro requested reasonable accommodation from his employer in the form of a modification of his work schedule to include remote days on

Monday and Friday when he was commuting from Longview, Texas, where he resided, to Texarkana, Texas for work. He further requested to be able to complete medical treatment or his back and related pain.

81. Specifically, Defendant discriminated against Plaintiff by:

   a. Treating him differently and less favorably than similarly situated employees without disabilities;

   b. Denying him equal opportunities for continued employment;

   c. Creating a hostile work environment based on his disability;

   d. Constructively discharging him because of his disability and requests for accommodation

82. Defendant's discrimination was intentional, deliberate, and in violation of the ADA.

83. Plaintiff was replaced by someone outside of his protected class.

**FAILURE TO ENGAGE IN THE INTERACTIVE PROCESS**

84. Plaintiff incorporates by reference all preceding allegations as if fully set forth herein.

85. Section 12112(b)(5)(A) of the ADA provides that discrimination includes not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity.

86. Chapter 21 of the Texas Labor Code similary requires employers to engage in the interactive process to determine if a reasonable accommodation can be provided.

87. Under this provision, Defendant had a statutory duty to make reasonable accommodations to the known physical limitations of Plaintiff, an otherwise qualified individual with a disability, unless such accommodation would impose an undue hardship.

88. Plaintiff made Defendant aware of his disability and requested specific, reasonable accommodations that would have enabled him to perform the essential functions of his position.

89. The requested accommodations:

    a) Were directly related to Plaintiff's disability and medical treatment needs;

    b) Would have enabled performance of all essential job functions;

    c) Would not have imposed undue hardship on Defendant;

    d) Were similar to accommodations already provided to other employees for non-disability reasons; and

    e) Were supported by medical documentation from treating physicians.

90. Defendant failed and refused to provide any reasonable accommodations whatsoever, in direct violation of the ADA and Chapter 21 of the Texas Labor Code.

91. Defendant cannot demonstrate that the requested accommodations would have imposed an undue hardship.

92. Plaintiff incorporates by reference all preceding allegations as if fully set forth herein.

93. The ADA requires employers to engage in an interactive process with employees seeking reasonable accommodations. *See* 42 U.S.C. § 12112(b)(5)(A).

94. The interactive process is a mandatory process requiring bilateral cooperation and communication between the employer and employee to explore possible accommodations.

95. Upon learning of Plaintiff's disability and accommodation needs, Defendant had a statutory duty to engage in good faith in an interactive process to identify reasonable accommodations.

96. The interactive process should have included a good faith dialogue about Plaintiff's limitations and accommodation needs and analysis of the essential functions of Plaintiff's position to determine if potential accommodations were possible.

97. Defendant completely failed to engage in the required interactive process.

98. Defendant's failure to engage in the interactive process was in bad faith and directly contributed to the breakdown of the employment relationship.

## RETALIATION IN VIOLATION OF THE ADA and CHAPTER 21 OF THE TEXAS LABOR CODE

99. Plaintiff incorporates by reference all preceding allegations as if fully set forth herein.

100. Section 12203(a) of the ADA provides that "[n]o person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter."

101. Similarly, Chapter 21 of the Texas Labor Code prohibits retaliation against employees for opposing discrimination.

102. Plaintiff engaged in protected activity under the ADA and Chapter 21 of the Texas Labor Code by requesting reasonable accommodations, complaining of and opposing discriminatory practices he reasonably believed violated the ADA to his supervisors, and complaining about discriminatory treatment to Human Resources.

103. Defendant took adverse employment actions against Plaintiff, including actions that affected the terms, conditions, and privileges of his employment. Defendant's forced Plaintiff to quit through a constructive discharge because of his complaint regarding being treated differently because of his disability.

104. Defendant further denied all accommodation requests, created a hostile and punitive work environment, and created intolerable working conditions under both subjective and objective standards.

105. Defendant's adverse actions were causally connected to and motivated by Plaintiff's protected activity.

106. A reasonable employee in Plaintiff's position would have been deterred from engaging in protected activity by Defendant's conduct.

107. Defendant's conduct violated both the ADA and Chapter 21 of the Texas Labor Code.

## V. AGENCY AND *RESPONDEAT SUPERIOR*

108. Whenever in this petition it is alleged that a Defendant did any act or thing, it is meant that the Defendant's officers, agents, servants, employees or representatives did such act or thing and that at the time such act or thing was done, it was done with the full authorization or ratification of or by the Defendant and was done in the normal and routine course and scope of employment of Defendant's officers, agents, servants, employees or representatives and that they are responsible through the legal theories of agency and *respondeat superior*.

## VI. DAMAGES

109. As the result of Defendant's actions, Plaintiff has suffered and will suffer past, present, and future lost earnings, loss of earning capacity in the past and future, employee benefits in the

past and future, and pecuniary losses, for which Plaintiff pleads to recover at trial. The lost earnings and benefits damages sought are within the jurisdictional limits of this court.

110. As a consequence of Defendant's actions, Plaintiff has suffered and will suffer past, present, and future compensatory damages (including emotional pain and suffering, inconvenience, mental anguish, damage to reputation, loss of enjoyment of life, and other noneconomic losses), for which Plaintiff pleads to recover at trial. The damages and equitable relief for said compensatory damages sought are within the jurisdictional limits of this court. Plaintiff seeks an order from the Court requiring Defendant to place a copy of its judgment against Defendant in Defendant's HR or other similar file relating to the Plaintiff.

111. Specifically, as a direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered and continues to suffer significant damages to include the following:

   a. Past lost wages in the amount of $132,000 annually from February 12, 2023, continuing through trial and the future lost wages in the amount of at least six years front pay, to further include any raises, incremental increases, bonuses, and/or cost of living increases;

   b. Past and future lost benefits, to include health insurance, retirement contributions, life insurance premiums, and other employment benefits;

   c. Past and future lost earning capacity over the rest of Plaintiff's expected work life expectancy and career trajectory;

   d. Mitigation expenses related to job search costs, career counseling, professional development, and retraining expenses;

   e. Mental Anguish in the past until the date of trial and in the future for at least three years for emotional distress, severe anxiety, and humiliation from discriminatory treatment and loss of career, constructive discharge, and financial hardship.

f. Loss of professional reputation including damage to career prospects and standing in higher education community;

g. Plaintiff further seeks reasonable attorneys fees in the past and in the future pursuant to Chapter 21 of the Texas Labor Code and the Americans with Disabilities Act.

h. Plaintiff seeks all remedies available and allowed under the Texas Labor Code in the past and future.

i. Plaintiff seeks expert witness fees.

j. Plaintiff seeks court costs and pre-judgment and post-judgment interest.

## VII.   ATTORNEYS' FEES

112. As a result of Defendant's acts and omissions, it necessitated Plaintiff to hire an attorney and incur fees related to the same. Plaintiff seeks recovery of reasonable attorneys' fees and costs, at a rate of $450 an hour, as provided by both the ADA and the Texas Labor Code for which Plaintiff's counsel will provide a CVV and will record and maintain contemporaneous billing records related to the same.

## VIII.   DESIGNATED EMAIL FOR SERVICE

113. The following is the undersigned attorney's designation of electronic service email address for all electronically served documents and notices, filed and unfiled: (trey@harperlawtx.com and service@harperlawtx.com and veronica@harperlawtx.com ). This is the undersigned's ONLY electronic service email addresses and service through any other email addresses will be considered invalid.

## IX.   ALTER EGO and MISNOMER

114. In the event any parties are misnamed or not included herein, it is Plaintiff's contention that such was a "misnomer" and/or such parties are/were "alter egos" of parties named herein.

## X. JURY DEMAND

115. Dr. Castro respectfully demands that this Court impanel a lawful jury to hear this case.

### XII. PRAYER FOR RELIEF

WHEREFORE, PREMISES CONSIDERED, Plaintiff JUAN R. CASTRO, SR., prays that upon final hearing, the Court enter judgment in favor of Plaintiff against Defendant in an amount in excess of the minimum jurisdictional limits of this Court, for economic damages, past and future loss of wages, earning capacity, and benefits, pecuniary losses, compensatory damages, back and front pay, liquidated damages, expert witness fees, attorneys fees, costs of court, pre- and post-judgment interest at the highest rate allowed by law, and for such other and further relief, general or special, at law or in equity, to which Plaintiff may be justly entitled.

**Respectfully submitted,**

**HARPER LAW FIRM**
18618 Tuscany Stone, Suite 210
San Antonio, Texas 78258
(210) 780-3881; Telephone
(210) 876-1891; Facsimile

BY:   */s/ Thomas N. Cammack, III*
**TAYLOR W. HARPER**
State Bar No. 24091573
taylor@harperlawtx.com; Email
**THOMAS N. CAMMACK, III**
State Bar No. 24073762
trey@harperlawtx.com; Email
**ATTORNEYS FOR PLAINTIFF**

*Service by this email address only